IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:07cr488-01

CAMERON CLAYTON

## MEMORANDUM OPINION

This matter is before the Court on the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 198). Having considered the motion, the United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 202), the defendant's REPLY IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE PURSUANT TO § 603(b) OF THE FIRST STEP ACT (ECF No. 209), the JOINT STATUS REPORT REGARDING COVID-19 VACCINATION (ECF No. 211), the Presentence Report (ECF No. 192), and the record herein, the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 198) will be denied.

## BACKGROUND

On March 7, 2008, Cameron Clayton pled guilty to interference with commerce by threats and violence, in violation of 18 U.S.C. § 1951; and the use, carry and brandishing a firearm during and in

relation to a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The offense level was 29 and the Criminal History Category was VI by virtue of the application of the career offender provision, U.S.S.G. § 4B1.1.[1] Clayton is currently serving a sentence of 324 months imprisonment and his release date calculated by the Bureau of Prisons is June 17, 2031. Clayton is assigned to Butner FMC which houses 698 inmates.

The offense of conviction as set out in the Statement of Facts in the Presentence Report (ECF No. 192) was especially violent in its nature. Clayton and two co-defendants kicked in the front door of the victim's residence in the early hours of the morning. Each of the intruders displayed and brandished loaded firearms. Clayton and his co-conspirators were in pursuit of cash and one-half kilogram of cocaine and when they were unable to locate it, they pistol whipped the man who was in the house, kicked him, stomped on his face and head, and stabbed him twice in the legs. They also forced the female in the residence to open a car in search of drugs.

---

[1] The total points allocated to Clayton also would have produced a Criminal History Category VI. Additionally, there were some 17 convictions that no criminal history points were awarded for various reasons.

2

Clayton suffers from Stage IV terminal metastatic colorectal cancer that has recently spread to his liver. There is evidence that the medical survival rate for his condition is 6 to 12 months. There is evidence that there is a 15% chance that he could live for five more years. Clayton seeks compassionate release asserting that the terminal cancer and the short life expectancy provide extraordinary and compelling reasons for compassionate release from prison. He also asserts that the high risk of death or serious complication that COVID-19 poses to people with Stage IV cancer as a supporting reason.

On December 18, 2019, Clayton submitted to the Warden of Butner FMC a request for compassionate release and that request was denied on January 30, 2020. Clayton was offered the COVID-19 vaccine on February 19, 2020 but declined because the doctor could not assure him that the risks of taking the vaccine did not outweigh the benefits thereof considering that the medication he was taking resulted in an immune system that was reduced in effectiveness.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that

'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The policy statements are not binding but are informative and may be considered. United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at

*2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility." United States v. White, ___ F. Supp.3d ___, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020) (quoting United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020)).

1. **Particularized Susceptibility**

The defendant has established that he suffers from Stage IV metastatic colorectal cancer that has spread to his liver. The disease is projected to be terminal in 6 to 12 months.

The United States does not contest the diagnosis. However, the United States takes the view that Clayton cannot establish an extraordinary or compelling reason for compassionate release because he refused to be vaccinated against COVID-19. The Government correctly cites decisions holding that, if a defendant refuses to take appropriate preventive measures against COVID-19, the assertion that COVID-19 risks constitute extraordinary and compelling reasons for compassionate release is not viable. United States v. Madison, No. 2:17cr80, ECF No. 88 (E.D. Va. March 19, 2021); United States v. King, No. 16cr478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021). In ordinary circumstances, a

5

refusal to take a COVID-19 vaccination certainly warrants rejection of any claim of extraordinary or compelling reasons for compassionate release based on the risk, or the consequence, of contracting COVID-19. However, as Clayton points out in his reply brief (ECF No. 209), where, as here, the defendant is taking medications that compromise his immune system, and the risks and benefits to people in that condition are simply unknown, the analysis of what force to give to an applicant's refusal to take the vaccine changes.

Considering the entire record here, Clayton has satisfied the particularized susceptibility component of the applicable test.

2.  **Particularized Facility Risk**

Clayton has not met the particularized facility risk component of the appropriate test. His motion cites press releases and information respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at Butner FMC, the defendant's facility of incarceration. Further, the record reflects that, at the time of the filing of the Government's papers, Butner FMC had no active case of COVID-19 among inmates, no active cases of COVID-19 among staff, and 140 inmates and 54 staff members who had previously recovered from COVID-19. In addition, all inmates who have tested positive are

6

being appropriately treated and isolated in accord with the appropriate CDC guidelines that have been adopted by the Bureau of Prisons. Finally, those statistics and the fact that Butner FMC has vaccinated so many inmates and staff shows a significantly decreased risk that COVID-19 will present a risk at Butner FMC going forward.

On this record, Clayton has not met the particularized facility component of the applicable test.

3. **Assessment Under 18 U.S.C. § 3553(a)**

But, even if Clayton had met the particularized facility assessment (which he has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community. The defendant argues, in conclusory fashion, that he is not a danger to the community. That, he says, is largely because of the lessons he has learned from confinement and the fact that he is dying.

The record, however, forecloses a finding that Clayton does not present a danger to the community. To begin, the offenses of conviction are acts of extreme violence presenting the real consequences of danger to others. That is significant because it

shows a willingness to engage in conduct that is dangerous to others. That willingness is further demonstrated by a lengthy criminal history that is indeed quite serious. Clayton had previous convictions for arson, for possession of firebombs, and for assault. He has previous convictions for distribution of cocaine, for possession of cocaine with intent to distribute, conspiracy to distribute cocaine, for escape from jail, and for sale and distribution of marijuana. He has numerous convictions for violation of parole. He was under the criminal justice system when he committed the offenses of conviction having been put on parole on July 27, 2006 and committed the offense of conviction on September 18, 2007, slightly more than a year after his release on parole. That history and this record bespeaks danger consistently demonstrated over a lifetime. It also bespeaks a need to protect the public and to take action to deter Clayton from further crime.

At this time, the medical records indicate that Clayton is able to tend to his daily needs and certainly is not immobilized by his terminal condition. When that situation will change, no one knows. But as of now, he presents a classic case of the dangerous person who is inclined to recidivate and to commit crimes. That conclusion is underscored by the fact that he has incurred a disciplinary infraction nearly every year between 2011 and 2020 and that demonstrates his disregard for rules and

regulations and for the need to adhere to them. Accordingly, the record does not permit a finding that Clayton is not a dangerous person. To the contrary, it shows that he is dangerous.

The factors under 18 U.S.C. 3553(a) counsel against compassionate release. The seriousness of the offense, the need to protect the public, the need to promote respect for the law, and the need to deter the defendant all counsel against granting Clayton's motion. Clayton asserts that he has "made an intentional effort at rehabilitation and self-improvement" while in prison. However, the prison records show the opposite. In that regard, it is necessary to note Clayton's continued disregard for the rules of the prison facility. The records of his progress in prison show that he has completed just one course, a study of health and nutrition in 2013. There is no record that he has participated in any other courses between 2013 and 2021. The United States argues, with some force, that "[s]imply put, the defendant has not taken any steps whatsoever toward self-improvement or rehabilitation while incarcerated." (ECF No. 202, p. 25 (emphasis in the original)). The Court cannot recall any case in which a defendant has made so little effort toward self-improvement while in prison.

Nor does Clayton's suggestion that he be placed on electronic monitoring and home confinement provide support for a conclusion

that the defendant is an appropriate candidate for compassionate release. For the reasons set forth above, he is not.

## CONCLUSION

For the foregoing reasons, the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 198) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June 29, 2021